*Matter of S-I-K-* in support of its assertion that the bank fraud that was the object of the conspiracy charge against the Respondent was an offense that involved "fraud or deceit" where the *potential* loss to ABN AMRO bank exceeded $10,000. 24 I&N Dec. at 327.  The Court finds that the sentencing report provides clear and convincing evidence that, with respect to the conspiracy offense, and independent of the bank fraud offense, $200,000 to $350,000 was the *potential* loss to ABN AMRO.  *See id.*  Accordingly, the Court finds that the Respondent is convicted of an aggravated felony.

## B.    Relief

The Respondent is ineligible for cancellation of removal pursuant to INA § 240A(a), as he has been convicted of an aggravated felony.  *See* INA § 240A(a) (precluding relief under that section for aggravated felons).  Similarly, because the Respondent was convicted of an aggravated felony following his admission to the United States as a lawful permanent resident, he is ineligible for a waiver of inadmissibility under INA § 212(h).  See INA § 212(h)(2).

The Court further finds that the Respondent is ineligible for a waiver of inadmissibility pursuant to former INA § 212(c) because he did not enter a plea agreement in his criminal trial in 1994, but rather pled not guilty and went to trial.  *See Dias v. INS,* 311 F.3d 456 (1st Cir. 2002) (relying on *INS v. St. Cyr*, 533 U.S. 289 (2001) in holding that where an alien is convicted following a trial, 212(c) relief is not available to that alien); *see also Nadal-Ginard v. Holder*, 558 F.3d 61 (1st Cir. 2007 (same holding, and specifically not reaching issue of whether an "objective potential reliance standard" is appropriate for determining whether 212(c) relief should apply retroactively); *see also* 8 C.F.R. § 1212.3(h).  Based on this First Circuit precedent, because the Respondent went to trial, and notwithstanding the letter from his prior counsel written after his trial indicating his intended reliance on 212(c) relief, he is not eligible for such relief.  *See id.*

**IV.    ORDER**

**IT HEREBY ORDERED** that the Respondent's application for Cancellation of Removal under section 240A(a) of the Act is **PRETERMITTED**.

**IT IS HEREBY FURTHER ORDERED** that the Respondent's application for a Waiver of Inadmissibility under Former section 212(c) of the Act is **PRETERMITTED**.

**IT IS HEREBY ORDERED** that the Respondent's application for a Waiver of Inadmissibility under section 212(h) of the Act is **PRETERMITTED**.

**IT IS HEREBY FURTHER ORDERED** that the Respondent be **REMOVED** to **AUSTRALIA**.

Date

**PAUL M. GAGNON**
United States Immigration Judge

6

**UNITED STATES IMMIGRATION COURT**
**JFK FEDERAL BLDG., ROOM 320**
**BOSTON, MA 02203**

IN THE REMOVAL CASE OF
**Alien # 041-623-010**
**Alien Name:    MARTIGNONI, JAMES PHILIP**
                RESPONDENT

### ORDERS

This is a memorandum of the Court's Decision and Orders entered on  **May 4, 2010.**
This memorandum is solely for the convenience of the parties.
The oral or written Findings, Decision and Orders is the official opinion in this case.
( ) Both parties waived issuance of a formal oral decision in the case.

[ ]    The respondent was ordered REMOVED from the United States to
_____ ( ) in absentia.

[ ]    Respondent's application for VOLUNTARY DEPARTURE was DENIED and respondent was ordered
removed to _____, in the alternative to
_____.

[ ]    Respondent's application for VOLUNTARY DEPARTURE was GRANTED until
_____, upon posting a voluntary departure bond in the amount of
$_____ to DHS within five business days from the date of this Order, with an alternate Order of
removal to _____ or _____. Respondent shall present to DHS
within ( ) thirty days ( ) sixty days from the date of this Order, all necessary travel documents for
voluntary departure.

[ ]    Respondent's application for ASYLUM was
( ) granted ( ) denied ( ) withdrawn with prejudice.
( ) subject to the ANNUAL CAP under the INA section 207(a)(5).
( ) Respondent knowingly filed a FRIVOLOUS asylum application.

[ ]    Respondent's application for WITHHOLDING of removal under INA section 241(b) (3) was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ]    Respondent's application for WITHHOLDING of removal under the Torture Convention was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ]    Respondent's application for DEFERRAL of removal under the Torture Convention was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ]    Respondent's application for CANCELLATION of removal under
section ( ) 203(b) of NACARA, ( ) 240A(a) ( ) 240A(b)(1) ( ) 240A(b)(2) of the INA, was
( ) granted ( ) denied ( ) withdrawn with prejudice.
If granted, it was ordered that the DHS issue all appropriate documents necessary to give effect to this
Order.
Respondent ( ) is ( ) is not subject to the ANNUAL CAP under INA section 240A(e).

[ ]    Respondent's application for a WAIVER under the INA section _____ was
( ) granted ( ) denied ( ) withdrawn or ( ) other _____.
( ) The conditions imposed by INA section 216 on the respondent's permanent resident status were
removed.

[ ]    Respondent's application for ADJUSTMENT of status under section _____ of the
( ) INA   ( ) NACARA ( ) _____ was
( ) granted ( ) denied ( ) withdrawn with prejudice.
( ) granted on a conditional basis under § 216 of the INA.
If granted, it was ordered that DHS issue all appropriate documents necessary to give effect to this
Order.

**Alien Number: 041-623-010**          **Alien Name: MARTIGNONI, JAMES PHILIP**

[ ]      Respondent's status was RESCINDED pursuant to the INA section 246.

[ ]      Respondent's motion to WITHDRAW his application for admission was ( ) granted ( ) denied.
         If the respondent fails to abide by any of the conditions directed by the district director of DHS, then the
         alternate order of removal shall become immediately effective without further notice or proceedings: the
         respondent shall be removed from the United States to _____.

[ ]      Respondent was ADMITTED as a _____ until
         _____. As a condition of admission, the respondent was ordered to post a
         $ _____ bond.

[ ]      Case was ( ) TERMINATED ( ) with ( ) without prejudice ( ) ADMINISTRATIVELY CLOSED.

[ ]      Respondent was orally advised of the LIMITATION on discretionary relief and consequences for
         failure to depart as ordered.
         [ ] If you fail to voluntarily depart when and as required, you shall be subject to civil money penalty of
         at least $1,000, but not more than $5,000, and be ineligible for a period of 10 years for any further relief
         under INA sections 240A, 240B, 245, and 248 (INA Section 240B(d)).
         [ ] If you are under a final order of removal, and if you willfully fail or refuse to 1) depart when and as
         required, 2) make timely application in good faith for any documents necessary for departure, or 3)
         present yourself for removal at the time and place required, or, if you conspire to or take any action
         designed to prevent or hamper your departure, you shall be subject to civil money penalty of up to $500
         for each day under such violation. (INA section 274D(a)). If you are removable pursuant to INA 237(a),
         then you shall further be fined and/or imprisoned for up to 10 years. (INA section 243(a)(1)).

[ ]      Other: _____

         _____

         _____

                                                    **PAUL M. GAGNON**, Immigration Judge
                                                    **Date: May 4, 2010**

APPEAL:       WAIVED -- RESERVED

BY:     RESPONDENT -- DHS -- BOTH

DUE BY: _____/_____/_____

---

                          **CERTIFICATE OF SERVICE**
THIS DOCUMENT WAS SERVED BY:      MAIL (M)          PERSONAL SERVICE (P)
TO: [ ] ALIEN    [ ] ALIEN c/o Custodial Officer    [ ] ALIEN's/ATT/REP   [ ] DHS
DATE: **May 4, 2010** BY: [ ]COURT STAFF _____ [ ]JUDGE_____
Attachments: [ ] EOIR-33 [ ] EOIR-28 [ ] Legal Services List [ ] Other
                                                                        Y2

# EXHIBIT B

11 8 1 mrtg                                                    1297

1     UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
2     -------------------------------x

3     UNITED STATES OF AMERICA,

4              v.                          92 Cr. 1097

5     JAMES MARTIGNONI,                    Jury Trial

6              Defendant.

7     -------------------------------x

8                                          November 8, 1993
                                           10:30 a.m.
9
      Before:
10
                        HON. JOHN F. KEENAN,
11
                                           District Judge
12

13

14

15                           APPEARANCES

16
      MARY JO WHITE
17         United States Attorney for the
           Southern District of New York
18    ALAN J. BRUDNER
           Assistant United States Attorney
19

20    PAUL WARE,
      JACQUELINE SCOTT CORLEY,
21         Attorneys for Defendant

22

23

24

25

            SOUTHERN DISTRICT REPORTERS 212-791-1020

11 8 1 mrtg

Summation - Mr. Brudner

1       While that testimony is significant, the

2  government's case does not depend on Phil Mastrandrea.  He

3  is one piece of the puzzle, a significant piece but just

4  one.  There are also many others that prove the allegations

5  in this case beyond a reasonable doubt.

6       I am going to ask you now to just step back with

7  me a little bit into this chronology to when Mr. Martignoni

8  joined ABN AMRO bank.  Mr. Guarino said he interviewed Mr.

9  Martignoni more than once.  They discussed trading

10  philosophies, what Mr. Martignoni's job would be, and in

11  general terms his salary and bonus.  Salary was to be based

12  on his level of expertise, and his bonus was to be based on

13  total revenues for the year.  In very general terms.  It was

14  not a sticky point of negotiation, but it was discussed

15  right at the beginning.  And the bonus was not going to be a

16  fixed percentage of Mr. Martignoni's profitability but,

17  according to Mr. Guarino, around 5 to 12 percent or in that

18  range of Mr. Martignoni's returns.  So they had a general

19  discussion.

20       Note that the bank at the end of the year, based

21  on the documents you have seen and the testimony you have

22  heard, believed that Mr. Martignoni's net profits were

23  around $4 million before all of this was found out, and his

24  bonus of $200,000 would be 5 percent of that.  And recall

25  that Mr. Guarino told you that he was prepared to go higher,

11 8 1 mrtg

Summation - Mr. Brudner

1   somewhere in the range of 400,000 or more.  So the bonus

2   that was discussed with Mr. Martignoni in October or

3   November 1991 was right in line with what Mr. Guarino tells

4   you he had discussed before Mr. Martignoni joined the bank.

5           Toward the end of the year, October/November, Mr.

6   Martignoni knew the exact amount of what his raise would be

7   and what his bonus was expected to be, and he knew all along

8   that they were generally tied to his performance.  Common

9   sense would tell you that Mr. Martignoni knew as well, not

10  necessarily in a dollar-for-dollar sense, that his

11  compensation would be tied to his financial performance.

12  That is hardly a secret among traders with securities on

13  Wall Street type jobs.  Mr. Martignoni, while he had been in

14  Boston and worked for bankers in Australia, was in the

15  industry and would certainly have had some idea of what

16  compensation is based on.  That is just not a secret.  And

17  it was specifically discussed.

18          Now, Mr. Martignoni had reasons, in addition to

19  simply salary and bonus, for wanting his profitability to

20  appear higher than it was.  The substance of what Mr.

21  Guarino told you was that Mr. Martignoni was considered a

22  rising star.  He was an excellent trader.  Mr. Martignoni

23  would have received the biggest bonus on the desk if he

24  wanted, much more, in fact, than a much more senior trader,

25  Victor Polce.  Mr. Guarino's star was rising along with

# EXHIBIT C

11 8 1 mrtg                                                    1297

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          92 Cr. 1097

5    JAMES MARTIGNONI,                     Jury Trial

6              Defendant.

7    ------------------------------x

8                                          November 8, 1993
                                           10:30 a.m.
9
     Before:
10
                       HON. JOHN F. KEENAN,
11
                                           District Judge
12

13

14

15                       APPEARANCES

16
     MARY JO WHITE
17        United States Attorney for the
          Southern District of New York
18   ALAN J. BRUDNER
          Assistant United States Attorney
19

20   PAUL WARE,
     JACQUELINE SCOTT CORLEY,
21        Attorneys for Defendant

22

23

24

25

Mr. Brudner - summation

1    according to Kristen Burch, and he told Kristen Burch, don't

2    tell anybody because people can lose their jobs over this.

3              Now, all of this doesn't matter, and if all of

4    this only affects unrealized profit and loss, why would

5    anybody lose their jobs over it, and why would

6    Mr. Martignoni make a comment like that?  It doesn't make

7    any sense, and the reason it doesn't is because, based on

8    the evidence before you, I think you can see that it is just

9    not true.

10             Unlike what Mr. Martignoni was causing to be

11   reported to the bank, unlike the theory that he gave Michael

12   Geslak, James Martignoni knew full well that his portfolio

13   contained multi-million dollar losses if the options were

14   valued in a more reasonable fashion than what he was doing

15   on FENICS and submitting to the back office.

16             And for that reason, come November, Mr.

17   Martignoni knew that he couldn't fully carry out Michael

18   Guarino's corrective to lighten his book.  The loss is like

19   having something, a ball, let's say, underneath a blanket.

20   You pat it down in one place and it has to come up somewhere

21   else.  It doesn't disappear.  So when Mr. Martignoni was

22   told get rid of the risk, square your book, you are leaving

23   for a month, we don't want a lot of risk on the book,

24   Mr. Martignoni took another step in his fraud to hide that

25   ball under the blanket.  He knew that the bank was looking

# EXHIBIT D

10 27 1mart

4

284

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          92 Cr. 1097 (JFK)

5    JAMES MARTIGNONI,

6              Defendant.

7    -------------------------------x

8                                          October 27, 1993
                                           10:40 a.m.
9
     Before:
10
                        HON. JOHN F. KEENAN,
11
                                           District Judge
12
                        APPEARANCES
13
     MARY JO WHITE
14        United States Attorney for the
          Southern District of New York
15   ALAN J. BRUDNER
          Assistant United States Attorney
16
     PAUL WARE,
17   JACQUELINE SCOTT CORLEY,
          Attorneys for Defendant
18

19

20

21

22

23

24

25

10 27 1mart

Burch - cross

302

Q.      The bank hasn't lost any dollars in the sense that we might think of it, the bank hasn't paid out that unrealized loss; isn't that correct?

A.      No, it hasn't.

Q.      When you testified regarding the Bankers Trust decimal points that you moved, it is clear, is it not, that you moved -- well, you initially made a mistake, didn't you?

A.      Yes.

Q.      On the first Bankers Trust option, you accidentally moved the decimal point one place causing the premium that the bank was taking in to look larger; isn't that right?

A.      Yes.

Q.      You then deliberately changed five other premiums on successive Bankers Trust options; is that correct?

A.      Yes.

Q.      At the time those things occurred, James was in Amsterdam; is that right?

A.      Yes.

Q.      And he had no knowledge of what you did until sometime after those were completed and you told him on the telephone, isn't that correct?

A.      It was all my idea.

Q.      Even at the time, however, that you made these deliberate changes of decimal points on the premiums to the

# EXHIBIT E

1      UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2      - - - - - - - - - - - - - - - - - - - - - - - - -x

3      UNITED STATES OF AMERICA,

4            v.                  92 Cr. 1097 JFK

5      JAMES MARTIGNONI,

6           Defendant.        JUN 29 1994

7      - - - - - - - - - - - - - - - - - - - - - - - - -x

8

9                                March 15, 1994
10                               9:02 a.m.

11

12    Before:

13                    HON. JOHN F. KEENAN,

14                             District Judge

15

16                    APPEARANCES

17     MARY JO WHITE,
18        United States Attorney for the
        Southern District of New York
19     ALAN J. BRUDNER,
        Assistant United States Attorney

20

21     GOODWIN, PROCTER & HOAR
        Attorney for defendant
22     BY:  PAUL F. WARE, JR., Esq.
          JACQUELINE SCOTT CORLEY, Esq.
23                 Of counsel

24     ALSO PRESENT:
        EDWARD SAKS, Special Agent F.B.I.
25         GEORGE ELLIS, U.S.P.O.

           SOUTHERN DISTRICT REPORTERS (212) 791-1020
                  JEROME A. HARRISON

1           In my view, not only in this case, but in any

2      case, sentencing is the most important function of a federal

3      judge.  In this case, it is uniquely important.  Having

4      enhanced the base offense level of 6 by the eight levels for

5      the loss noted above, the court further increases the

6      offense level by two points because there was -- I am

7      quoting from the section -- "more than minimal planning

8      involved in the offense," and I am referring to Section

9      2F1.1(b), Subdivision 2, of the guidelines.

10          Further, under Section 3B1.3, the further

11     enhancement for abuse of trust is appropriate.  This final

12     two-point enhancement takes us to a level of 18, with a

13     criminal history category of 1.  The scope for punishment,

14     thus, under the guidelines is 27 to 33 months.

15          The court is persuaded that Section 5K2.10 of the

16     guidelines does apply in this case because I believe that

17     ABN-AMRO, by its wrongful conduct, contributed significantly

18     to the offense behavior here.  The bank did not train

19     Mr. Martignoni, and when he sought help by asking Mr. Geslak

20     be transferred to the options desk, he didn't receive any

21     help.

22          Further, the bank failed to follow its own policy

23     or the federal recommendations concerning the options

24     trading.

25          On top of all of that, I received the letter

EXHIBIT F

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    -------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                           92 Cr. 1097 (JFK)

 5    JAMES MARTIGNONI,

 6                   Defendant.

 7    -------------------------------x

 8                                           October 27, 1993
                                             10:40 a.m.
 9

10    Before:

                         HON. JOHN F. KEENAN,
11
                                             District Judge
12
                             APPEARANCES
13
      MARY JO WHITE
14         United States Attorney for the
           Southern District of New York
15    ALAN J. BRUDNER
           Assistant United States Attorney
16
      PAUL WARE,
17    JACQUELINE SCOTT CORLEY,
           Attorneys for Defendant
18

19

20

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS (212) 791-1020
STEVEN NEIL COHEN

10 27 1mart

Burch - cross                               308

1    solve it; through no fault of your own, you simply weren't

2    able to solve it; isn't that right?

3         A.    Yes, I guess that would be right.

4         Q.    You felt lousy, you were panicked about the

5    situation; isn't that correct?

6         A.    Uh-huh.

7         Q.    And the decisions you made were in the context --

8               THE COURT:  Uh-huh means yes?

9               THE WITNESS:  I am sorry; yes.

10              THE COURT:  And the decisions you made --

11   BY MR. WARE:

12        Q.    Were in the context of that panic and illness; is

13   that correct?

14        A.    Yes.

15        Q.    As of December 3, 1991, you certainly didn't

16   believe that you had done anything illegal, did you?

17        A.    No, I didn't think I did anything illegal.

18        Q.    And as of December 4 and, for that matter, long

19   after you had left the bank, you didn't believe had you done

20   anything illegal; did you?

21        A.    No.

22        Q.    Because at no time had you had any intention to

23   victimize the bank or to steal anything or to do anything

24   but to stall for your boss to get back to the United States;

25   isn't that correct?

1       A.      Yes.

2       Q.      On December 3, 1991 you simply didn't believe you

3   had done anything wrong; isn't that correct?

4       A.      I didn't think I did anything illegal.

5       Q.      Do you recall testifying on another occasion, and

6   I am not going to say what that occasion was and you should

7   not say either, but do you recall testifying under oath on

8   another occasion in this courtroom before Judge Keenan in

9   May 1993?

10      A.      Yes.

11      Q.      Do you recall being asked this question and

12  giving this answer:

13              "Q.     Is your testimony as of December 3, 1991

14  you did not believe you had done anything wrong; is that

15  correct?

16              "A.     That is correct."

17              Do you recall having said that?

18      A.      Vaguely.

19              MR. WARE:  May I show the witness the transcript,

20  your Honor?

21              THE COURT:  You may.

22              MR. WARE:  May I have the court's permission to

23  ask a couple of questions from here, your Honor?

24              THE COURT:  You may.

25  BY MR. WARE:

Burch - cross                                     311

1               Did you say that?

2       A.      Again, since it appears there I must have said

3   it.

4       Q.      In any event, you would agree that at no time

5   until long after these events did you view anything you had

6   done as illegal, isn't that correct?

7       A.      No, I didn't think I did anything illegal.

8       Q.      The first time it occurred to you that some kind

9   of crime had been committed as opposed to your simply trying

10  to buy some time to get your boss back to the United States

11  to figure out a problem was some months later when the

12  prosecution, in effect, told you you committed a crime; is

13  that correct?

14              MR. BRUDNER:  Objection.

15              THE COURT:  Objection overruled.

16              THE WITNESS:  Well, it was the prosecution and my

17  attorney.  They both said that I had done something illegal.

18  BY MR. WARE:

19      Q.      Before these outside people said to you, you have

20  done something that was illegal, you didn't believe anything

21  you had done was illegal; is that right?

22      A.      That's right.

23      Q.      Throughout these events so far as you are

24  concerned you never had any intention to do anything

25  illegal; isn't that right?

1      A.     That's right.

2      Q.     You never had any intention to come to any

3   agreement, tacit, explicit or otherwise, with Mr. Martignoni

4   to do anything illegal; isn't that correct?

5      A.     Had I known it was illegal I wouldn't have done

6   it.

7      Q.     But the point is you had no understanding at any

8   point during these events that anything you were doing was

9   illegal; isn't that right?

10     A.     That's right.

11     Q.     So your intentions were never to do anything

12  illegal, correct?

13     A.     Right.

14            (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT G

10 27 1mart

*4*

284

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        92 Cr. 1097 (JFK)

 5    JAMES MARTIGNONI,

 6                  Defendant.

 7    ------------------------------x

 8                                       October 27, 1993
                                         10:40 a.m.
 9
      Before:
10
                        HON. JOHN F. KEENAN,
11
                                         District Judge
12
                           APPEARANCES
13
      MARY JO WHITE
14         United States Attorney for the
           Southern District of New York
15    ALAN J. BRUDNER
           Assistant United States Attorney
16
      PAUL WARE,
17    JACQUELINE SCOTT CORLEY,
           Attorneys for Defendant
18

19

20

21

22

23

24

25
```

10 27 1mart

Burch - cross                                      303

1    Bankers Trust options, you had no intent at that time, did

2    you, to harm ABN?

3         A.    No.

4         Q.    You had no intent to defraud the bank, you had no

5    intent to steal any money, you had no intent in cahoots with

6    Mr. Martignoni to victimize the bank in any way whatsoever,

7    even when you did those decimal points, isn't that correct?

8              MR. BRUDNER:  Objection to the term, defraud.

9              THE COURT:  The question is bad as to form

10   because of something else in it.

11             Sustained.

12   BY MR. WARE:

13        Q.    At the time you moved the decimal points in the

14   Bankers Trust premiums, you had no intention at that time to

15   victimize the bank, did you?

16        A.    No.

17        Q.    Your sole intention at that time was to buy time,

18   isn't that correct?

19        A.    Yes.

20        Q.    Throughout December 3 and December 4 your sole

21   intention in whatever you did in terms of changing different

22   parameters in FENICS or your conversation with Ms. Melendez

23   was to stall and to buy time, isn't that correct?

24        A.    Yes.

25        Q.    The purpose of the buying time was not so that

10-27-1mart

1          In fact, you say on the tape, this is all going

2      to be fixed tomorrow, don't worry about it; isn't that

3      right?

4          A.    Yeah.

5          Q.    Your purpose in talking to Ms. Melendez again was

6      not so that you could carry out some plan with James to

7      steal anything from the bank or even to mislead the bank

8      over time; it was simply to buy another day until he could

9      get back to the United States; isn't that correct?

10         A.    Yeah, I just wanted to buy time.

11         Q.    You had no intention in talking with Ms. Melendez

12     that the bank would actually lose money on that transaction,

13     did you?

14         A.    I didn't want anything to get paid out wrong, no.

15         Q.    The reason you didn't want anything to be paid

16     out wrong is because you specifically did not intend that

17     the bank be harmed financially from any of this; isn't that

18     right?

19         A.    I didn't want anyone to be harmed.

20         Q.    But, those intentions on your part includeed the

21     fact that you didn't want the bank to be harmed either; did

22     you?

23         A.    No.

24         Q.    So, again, the effort with Ms. Melendez was a

25     time-buying effort, a stalling effort, isn't that correct?

# EXHIBIT H

```
1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
2      ------------------------------x

3      UNITED STATES OF AMERICA,

4                v.                          92 Cr. 1097

5      JAMES MARTIGNONI,

6                     Defendant.

7      ------------------------------x

8                                       October 20,1993
                                        10:45 a.m.
9
       Before:
10
                         HON. JOHN F. KEENAN,
11
                                          District Judge
12
                            APPEARANCES
13
       MARY JO WHITE
14         United States Attorney for the
           Southern District of New York
15     ALAN J. BRUDNER
           Assistant United States Attorney
16
       PAUL WARE,
17     CERISE LIM-EPSTEIN,
           Attorney for Defendants
18

19

20

21

22

23

24

25
```

1          This is a case about fraud.  It is not about a

2     fraud to obtain money or a car or jewelry.  It is about a

3     fraud relating to something that you cannot see or touch.

4     It is something intangible and it's something that the law

5     recognizes as the intangible right to honest services.  You

6     will recognize it as just plain trust.

7          The case is about the kind of trust that a

8     business in this case ABN AMR bank, which is a large Dutch

9     bank with an office in New York, and some of its officers,

10    placed in every one of its employees to perform a honest

11    job, the kind of trust that should allow a businesslike bank

12    to operate knowing that it's receiving accurate information

13    about what is happening with its money.

14         Ladies and gentlemen, the evidence in this case,

15    the government expects, will show you that the defendant,

16    James Martignoni, the gentleman sitting at the end of this

17    table, abused the fundamental trust placed in him by

18    ABN-AMRO bank where he worked as a foreign exchange options

19    trader.

20         You will learn during this trial that he and his

21    trading assistant, a woman named Kristen Burch falsified

22    records, changed numbers, and tried to get another person

23    working at the bank in the bank's back office to lie on

24    their behalf, all for the purpose of misleading their

25    superiors at the bank.

SOUTHERN DISTRICT REPORTERS (212) 791-1020
MARVIN P. BIRNBAUM

# EXHIBIT I

11 8 1 mrtg                                                1297

```
 1      UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
 2      -------------------------------x

 3      UNITED STATES OF AMERICA,

 4                    v.                    92 Cr. 1097

 5      JAMES MARTIGNONI,                   Jury Trial

 6                    Defendant.

 7      -------------------------------x

 8                                          November 8, 1993
                                            10:30 a.m.
 9
        Before:
10
                        HON. JOHN F. KEENAN,
11
                                            District Judge
12

13

14

15                         APPEARANCES

16
        MARY JO WHITE
17          United States Attorney for the
            Southern District of New York
18      ALAN J. BRUDNER
            Assistant United States Attorney
19

20      PAUL WARE,
        JACQUELINE SCOTT CORLEY,
21          Attorneys for Defendant

22

23

24

25
```

11 8 1 mrtg

Summation - Mr. Brudner

1303

1     That is what is wrong here, too, ladies and

2   gentlemen.  The defense, as the judge told you at the

3   beginning and will tell you again, has absolutely no burden.

4   The defense does not have to prove anything.  But Mr. Ware

5   has proven something to you.  He has proven that ABN AMRO

6   left its door unlocked, and the issue in this case is

7   whether or not somebody, Mr. Martignoni in this case, came

8   along and took advantage of it.  Maybe ABN AMRO could have

9   prevented this loss or stopped this crime from occurring.

10  But leaving the door unlocked doesn't excuse the crime.

11     In this case the crime alleged is filing false

12  records and scheming to defraud ABN AMRO by Mr. Martignoni

13  and Ms. Burch, lying to the bank, and depriving it of its

14  right to expect Mr. Martignoni to act honestly.  For

15  $110,000 a year and an approved bonus of 200,000 or more

16  that he could have gotten renegotiated, ABN at least had the

17  right to expect Mr. Martignoni to act honestly.

18     You will hear from Judge Keenan at the end of

19  this case that as a bank in this case, a foreign bank with a

20  branch on United States soil, certain of our laws protect it

21  so that depositors, borrowers, and other people who deal

22  with the bank can hope to obtain accurate information in

23  their dealings with the bank.  That is why we are here and

24  that is what this case is about, not ABN's lack of

25  accounting controls or failures to abide by some of its own

# EXHIBIT J

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4           v.                   92 Cr. 1097 JFK

5    JAMES MARTIGNONI,

6          Defendant.       JUN 23 199...

7    ------------------------------x

8

9                          March 15, 1994
10                         9:02 a.m.

11
    Before:
12
                 HON. JOHN F. KEENAN,
13

14                       District Judge

15
                    APPEARANCES
16

17    MARY JO WHITE,
       United States Attorney for the
18       Southern District of New York
    ALAN J. BRUDNER,
19       Assistant United States Attorney

20

21    GOODWIN, PROCTER & HOAR
       Attorney for defendant
22    BY:  PAUL F. WARE, JR., Esq.
       JACQUELINE SCOTT CORLEY, Esq.
23             Of counsel

24    ALSO PRESENT:
       EDWARD SAKS, Special Agent F.B.I.
25       GEORGE ELLIS, U.S.P.O.


         SOUTHERN DISTRICT REPORTERS (212) 791-1020
               JEROME A. HARRISON

1        The objection to Paragraph 58 of the presentence

2    report is sustained.

3        The court believes that an 8-level enhancement

4    for sentence purposes which takes into account

5    Mr. Martignoni's salary and bonus of an amount between

6    200,000 and 350,000 is the appropriate loss to be recognized

7    and calculated in this case for guideline purposes; and,

8    thus, I grant an enhancement from the initial criminal

9    category Level 6 of eight points, to at that stage a level

10   14.

11       I further sustain the objection to Paragraph 62

12   of the presentence report.  I do not believe that there

13   should be an enhancement for role in the offense.  I don't

14   think that's appropriate in this case, and I decline to

15   grant it.

16       The 11 objections in Part C of the report, at

17   Paragraphs 75, 76, 78, 89, 90, 92, 93, 94, 95, 97 and 98 are

18   sustained, and it is my understanding the probation report

19   has been corrected to reflect those changes.

20       I reject the Probation Department's calculation

21   of the offense level and will set forth my final calculation

22   shortly.  The observations by the defense concerning

23   Paragraphs 108 and 113 of the presentence report I will

24   cover shortly.  All of the other defense objections to the

25   presentence report are overruled.